FILED *MHW*

MAY  6 2008 *qew*

5-6-2008

MICHAEL W. DOBBINS

CLERK, U.S. DISTRICT COURT

IN THE UNITIED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF ILLIONIS

ANTHONY F. BROWN, et al.                  )
                     PETITIONER,          )    CASE NUMBER: 03 CR 886
                                          )
                                          )    HONORABLE HARRY D. LEINEWEBER
        V.                                )    UNITED STATES DISTRICT COURT JUDGE
                                          )
                                          )    MEMORANDUM OF LAW IN SUPPORT
UNITED STATES OF AMERICA,                 )    FOR MOTION PURSUANT TO
                     RESPONDENT.          )    28 U.S.C. §2255

08CV2613
JUDGE LEINENWEBER
MAGISTRATE JUDGE MASON

INTRODUCTION

**NOW COMES,** ANTHONY F. BROWN hereinafter ("Petitioner" or "Brown"),
pro se, is a federal prisoner serving an 85 months sentence at Federal Prison
Camp Mancester, Kentucky. A SPECIAL 2002 GRAND JURY from the NORTHERN DISTRICT
OF ILLINOIS handed down an indictment charging Brown and five other defendants
with Conspiracy and Attempt to Possess Cocaine all in violation of 21 U.S.C.
§841 & 846. Brown was also charged with Theft of approximately twenty thousand
dollars ($20,000), in violation of 18 U.S.C. §641. Following a jury trial in
the UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS on December
10, 2003 through December 17, 2003, Brown was convicted by a jury on all charges.
Mr. Brown moved for a new trial on January 15, 2004. The District court denied
the motion on January 20, 2004. On February 27, 2004, Brown appeared before
the Honorable Suzanne B. Conlon, who sentenced Brown to Ninety-seven months
imprisonment.

Mr. Brown filed a timely notice of appeal to the Seventh Circuit Court
Of Appeals on March 4, 2004. Brown's trial attorney, Mary H. Judge, withdrew
as counsel for defendant due to irreconcilable differences on March 15, 2004.

Brown's appellate attorney, Kevin M. Fee, raised issues on appeal as to the convictions and sentence. On December 27, 2005, the Seventh Circuit Court of Appeals affirmed Brown's conviction, but a limited remand was ordered pursuant to **U.S. v. Paladino, 401 F.3d 471 (7th Cir. 2005)** as to Brown's sentence because the District Court applied the **Sentencing guidelines** as **MANDATORY**. The District Court issued an order advising the Appellate Court that she would have imposed a shorter sentence had she known the **Sentencing Guidelines** were advisory. Accordingly, on April 5, 2006, the Seventh Circuit Court of Appeals vacated and remanded Brown's original 97 months sentence. Brown appealed, arguing that the District Court committed reversible procedural error by refusing to conduct a full, "clean slate" resentencing. Brown's sentence was once again vacated and remanded for resentencing to a different judge. **See: 203 Fed. Appx. 711 C.A. (Ill.) 2006.** On June 2007 Brown was resentenced to Eighty-five months by the Honorable Harry D. Leineweber.

Mr. Brown respectfully requests liberal construction and interpretation of his **Pro se** papers "to raise the strongest arguments that they suggest." **Haines v. Kerner, 404 U.S. 519, 30 L.Ed.2d 652, 92 S.Ct. 594; Korsunskiy v. Gonzales, 461 F.3d 847 (7th Cir. 2006)("If the judge can see what the pro se litigant is driving at, that is enough").** Therefore, pro se, litigant's pleadings are to be liberally construed by this in order to achieve **"substantial justice"** within the spirit embodied in Fed.R.Civ.P. 8(f). Mr. Brown is submitting this motion pursuant to **28 U.S.C. §2255** requesting that his conviction and sentence be vacated on the grounds that his **Fifth** and **Sixth Amendment** rights to **Due Process** and **Effective Assistance of Counsel** were violated. This **MEMORANDUM** of law follows.

(2)

## I. STATEMENT OF ISSUES

**A.** Brown's Sixth Amendment Right To Effective Assistance of Counsel was Violated When Trial Counsel Failed To Request A **SEARS INSTRUCTION** be Given To The Jury.

**B.** Brown's Sixth Amendment Right To Effective Assistance Of Counsel Was Violated When Trial Counsel Failed To Request An **ENTRAPMENT INSTRUCTION** Be Given To The Jury.

**C.** Brown's Sixth Amendment Right To Effective Assistance Of Counsel Was Violated When Trial Counsel Refused To Call Two **PROSPECTIVE WITNESSES** who the prosecution Deemed **HOSTILE.**

## II. LAW AND ARGUMENT

Petitioner's claims turn upon underlying constitutional violations that were brought about by his trial counsel's failure to provide effective assistance of counsel guaranteed by the Sixth Amendment. "The right to counsel play a crucial role in the adversarial system embodied in the Sixth Amendment, since access to counsel's skill and knowledge is necessary to accord defendants the "ample opportunity to meet the case of the prosecution" to which they are entitled. See: Adams v. McCann, 317 U.S. 269, 275, 276 (1942).

Trial Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant.

To prevail on an ineffective assistance of counsel claim, the defendant must, hurdle a two prong test, (1) Defendant must show that counsel's performance fell below "an objective standard of reasonableness" and (2) That there is a reasonable probability that, but for counsel's unprofessional errors the proceedings would have been different. **Strickland, 466 U.S. 688, 694; Also See: Davis v. Lambert, 388 F.3d 1052, 1059 (7th Cir. 2004).** "Even if the odds that the defendant would have been acquitted had he received effective representation appears to be less than fifty percent, prejudice has been established so long as the chances ofacquittal are better than negligible. "The prejudice that must be shown need not be anything more than something as small as one additional day in jail." **See: Glover v. United States, 531 U.S. 198 (2001).**

**GROUND ONE:**

### TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO REQUEST A SEARS INSTRUCTION BE GIVEN TO THE JURY

Petitioner contends that his trial counsel prejudiced his defense by failing to request a **SEARS INSTRUCTION** that petitioner could not **conspire or agree with a government agent or informantt. U.S.v. Duff, 76 F.3d 122, 127 (7th Cir. 1996).** It is well-settled inthis circuit that [A] criminal defendant has the right to a jury instruction on his theory of defense, separate and apart from instructions given on the elements of the charge offense. **U.S. v. Irorere, 228 F.3d 816, 825 (7th Cir. 2000); Mathews v. United States, 99 L.Ed.2d 54 (1998).** Petitioner's trial attorney observed the prosecution on numerous occasions during opening argument, it's case-in-chief and closing argument states that Brown agreed with the government  informant (Mr. Polk) to steal money and drugs. The prosecution continuously pointed to the June 24, 2003, conversation to establish the elements of the conspiracy and attempt charged. The prosecution itself based it's theory of the case on petitioner agreeing to the conspiracy with the confidential informant (Mr. Polk). **See: Trial Transcript, opening**

**argument, page 472, lines 18-21.** A paid government informant acting on the government's behalf, goal was to wxpose rather than to commit a crime, there could not be the meeting of the mind required to establish a conspiratorial agreement. **U. S. v. Makimetas, 991 F.2d 379, 383 (7th Cir. 1993).**

Petitioner contends that trial counsel failed to motion the court to include in it's jury instruction, a **SEARS INSTRUCTION**, after the government's closing argument, consistently and continuously, referred to Brown agreeing to the conspiracy with the government informant.

The government attempted to establish a conspiracy between Brown, Grady and Kuykendoll by using the informant to **separately agree** with each defendant to commit the alleged offense. Mr. Polk was a government informer throughout the course of the activities charged in all counts. See: **Trial Transcript, page 67, lines 17-21.** On June 24, 2003, in a conversation that was recorded by Mr. Polk, it showed that Mr. Grady asked the Informant "How the hell we got Tony Brown in this man?" This shows that there was no direct or circumstantial evidence linking Brown and Grady to an agreement to steal narcotics of any type. A **SEARS INSTRUCTION** is proper where the prosecutins theory weighed heavily upon the alleged agreement between Brown and Mr. Polk the informant on June 24, 2003. This conversation played a prominent role in the trial and the jurors decision as emphasized in the Seventh Circuit opinion in **U.S. v. Gougis, 432 F.2d 735 (7th Cir. 2005).** Petitioner strongly contends that trial counsel failure to request a **SEARS INSTRUCTION** which attacked the heart of the prosecutions case-in-chief. This error coupled with the other cumulative errors of trial counsel, severely prejudiced the petitioner. creating a reasonable probability that , absent counsel's errors, the jury would have had a reasonable doubt respecting guilt. See: **Strickland v. Washington, 466 U.S. 668. Also see attachment (Pet. Ex. 1).(Appellants Motion to Withdraw As Counsel For Defendant).** Petitioner

contends that without without the **SEARS INSTRUCTION** the jury could have reasonably

convicted him by following the below mentioned jury charge. The jury charge

stated:

>    **"In deciding whether either of the charged conspiracies**
>    **existed, you may consider the actions and statements of**
>    **the alleged participants in each conspiracy."**

This jury charge was followed by another jury charge which stated that,

>    **"An agreement may be proven from all of the circumstances**
>    **and the words and conduct of all the alleged participants**
>    **shown by the evidence."**

See: **Trial Transcript, page 551, lines 13-19.** The jury could have easily believed

that they could convict petitioner from the above mentioned instruction without

knowledge that the **GOVERNMENT INFORMANT** cannot be considered a bona fide co-conspirator.

This instruction dealt with an important part of the trial which was so **'Vital'**

that the failure to request it, seriously impaired the petitioner's ability

to defend himself.

**GROUND TWO:**

## TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING
## TO RAISE OR REQUEST AN ENTRAPMENT INSTRUCTION
## OR DEFENSE

Petitioner contends that trial counsel failed to request an **ENTRAPMENT**

**DEFENSE OR INSTRUCTION** even after reviewing the evidence which without contradiction

showed that this was a **Manufactured** crime. The crime was conceived, created

and controlled at all points by the government. The government chose the date,

location, method and **"story"** of the crime. It's informant reached out to and

recruited the petitioner. Petitioner contends that the government informant

called him numerous times, as shown in the trial record. Trial counsel could

have shown that petitioner has never been accused or even arrested for a drug

crime, And was never predisposed to commit a drug crime. Petitioner strongly

disagreed with trial counsel on this matter, due to the case law in the Seventh

Circuit. In **U.S. v. Cervante, (1992),** the Seventh Circuit held that **"An Entrapment**

**Defense** requires a showing that the defendant was induced to prepetrate a crime

he was 'not' predisposed to commit." **950 F.2d** at 423. Also, in **U.S. v. Hollingsworth, 27 F.3d. 1196 (7th Cir. 1994)(en banc)**, the government "may not provoke or create crime, and then punish the criminal, its creature." **Casey v. United States, 276 U.S. 413, 423 (1928)(Brandies, J., dissenting).** The government proffered a pre-trial Motion-in-limine on December 1, 2003, arguing to preclude petitioners trial counsel from presenting evidence based on an entrapment theory of defense. Petitioners trial counsel failed to respond to this motion even though the prosecution based it's argument on petitioners' **predisposition'** as a principal element of Brown's initial burden to prove entrapment. Ms. Judge was well aware of petitioners background and that the petitioner was not a seller, buyer or user of drugs. Trial counsel also was aware that petitioner had not engaged in any theft of drugs prior to the government's manufactured crime. The informant had not even alluded to any type of wrong doing involving drugs as it relates to the petitioner.

Also, See: **Jacobson v. United States, 118 L.Ed.2d 174 (1992)(the government must 'prove that this predisposition was indepent and not the product of the attention that the Government directed at the [defendant]."** If the government believed that Brown was **'PREDISPOSED"** to steal money from drug dealers, it could have limited it's manufactured crime to that act. The government's argument that the money and drugs worked hand-in-hand was based upon their own decision to **"CREATE"** the crime.

The petitioner has continuously maintained that without the informant, this crime would have never come to fruition. The informant without a doubt controlled who was recruited, made the decisions, provided the **LEADERSHIP** and **ORGANIZATION** to the manufactured act. Prior to the commencement of trial testimony, the Honorable Suzanne B. Conlon asked trial counsel if she was going to use an entrapment defense. Ms. Judge stated "no." See: **(Trial Transcripts).**

Petitioner contends that there was no **strategic or tactical** reason to justify trial counsels non-response to the governments Motion-in-limine. Trail counsel should be familiar with controlling case law in this circuit which state's that **"Unless entrapment can be decided as a matter of law, the issue of whether a defendant has been entrapped is for the jury as part of its function of determining the guilt or innocence of the accused." Sherman v. United States, 356 U.S. 396, 377 (1958).** So, generally the question of entrapment is one for the jury, rather than for the court. **Mathews v. United States, 485 U.S. 58, 63 (1988),** And whether or not an entrapment defense ins available to a defendant is typically not amenable to pretrial resolution, This is because whether entrapment occurred is a factual issue; the defense of which is intertwined with the issue of intent and is often based on credibility determinations, which are traditionally reserved for jury resolution. Trail counsel should also know that as a general proposition a criminal defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor. **Stevenson v. United States, 162 U.S. 313 (1896).** Trial counsel believed that we could not raise an inconsistent defense. Petitioner contends that if counsel would have reviewed Supreme Court and Appellate case law through reasonable **'due diligence'**, she would have known that federal appellate courts has permitted the raising of inconsistent defenses. **See: Johnson v. United States, 426 F.2d. 651, 656 (1970).** Petitioner contends that trial counsels failure to request an **ENTRAPMENT INSTRUCTION** severely prejudiced his Constitutional right to a **fair and adversarial trial.** Trial counsels deficient performance in failing to request and / or present an affirmative defense of entrapment denied petitioner  proper effective assilstance of counsel as guaranteed by the Sixth Amendment and **Strickland, 466 U.S. 668.** Although, generally the decision whether to use an affirmative defense, may be strategic in nature, but courts can "second guess such decisions", if there is "no strategic or tactical justification

for the course taken."

The Supreme Court in **California v. Trombetta, 467 U.S.479, 485 (1984) states that ("We have long interpreted this standard of [fundamental] fairness to require that criminal defendants be afforded a meaningful opportunity to present a complete defense").**

Petitioner directs the court to the trial transcript which magnifies counsels incompetent representation, where counsel cross-examined Mr. Polk by asking the following questions:

> **Q. And by cooperating they want you to make cases for them.**
>
> **A. That is correct.**
>
> **Q. And the second thing is bring the agents new cases.**
>
> **A. That is correct.**

**See: (Trail Transcript, page 229, lines 12-14 and lines 20-22.).**

This solidifies petitioers claim that trialcounsel had knowledge of the possibility of raising an **ENTRAPMENT DEFENSE** by how she phrased her questions to the government's informant. Trial counsel went even further by asking Mr. Polk the following question:

> **Q. New people to prosecute, right?**
>
> **A. That is correct.**

**See: (Trial Transcript, Page 229, Lines 23-24.).**

Petitioner believes he has shown that trial counsel rendered inadequate assistance which so prejudiced his defense, that there is a reasonable probability that, but for counsels unprofessional errors, the result of the proceedings would have been different.

**GROUND THREE:**

### TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO CALL RAYMOND GRADY AND MARGIE COLLINS AS DEFENSE WITNESSES

Trial counsel refused to call two important withesses whom the prosecution had labeled as "HOSTILE" toward the prosecution and defense. Ms. Judge failed to investigate those allegations and if they were legitimate. To fail to interview any witnesses or prospective witnesses is a shocking dereliciton of professional duty when those same witnesses' statements were used heavily by the prosecution to introduce evidence in the prosecutions case-in-cheif. First, Mr. Grady, was named as one of petitioners co-conspirators.  Mr. Grady could have been asked about his statements that he had made during the alleged conspiracy, including his  state of mind and any agreements that were made with the petitioner to steal drugs.

Trial counsel understood by not interviewing or calling Mr. Grady to testify the prosecutions evidence could not be put to a adversarial test. Counsel has a duty to make reasonable investigations or to make a reasonable decision based on those investigations. Trial counsel knew that prior to trial, the prosecution filed a pre-trial Motion-in-Limine precluding the defense from eliciting testimony from Mr. Grady about his use of certain medication, ie... (Percodan, Percocet ect.). There was numerous evidence in the record showed that the informant and Mr. Grady had side agreements unknown to any other alleged participants. Trial counsel failed to call Ms. Collins, even though her statements were used to corroborate a  statement that petitioner had made. This potential witness statement was used by the prosecution to preclude trial counsel from arguing entrapment as an affirmative defense.  The prosecution relied heavily on Ms. Collin's statement to show **predisposition' by the petitioner.**  Trial counsel had available to her proper documentation that would have damaged the credibility of Ms. Collins

and Mr. Polk, Ms. Collins could have revealed that the petitioner was never accused of stealing any drugs from her. Trial counsel could have elicited testimony as to the gold watch that was allegedly taken. Petitioner contends that trial counsels failure to call these important prospective witnesses so prejudiced his defense, that it was a complete **"miscarriage of justice."**

When a defendant's lawyer has failed to interview key actual or potential witnesses, as at petitioners trial, a lawyer could not know how complete or accurate a prosepctive witnesses' statement to police was or the reasoning to their hostility to both the prosecution and defense. Petitioner contends that trial counsel performance had fallen below the minimum professional standards through her numerous cumulative errors. The Supreme Court has repeatedly held, however, that a criminal defendant's right to present a defense, including presenting witnesses on his behalf, is a fundamental right. **See: Montana v. Egelhoff, 518 U.S. 37, 43 (1996). "This right is a fundamental element of due process of law." See: Washington v. Texas, 388 U.S. 14, 19 (1967).** Petitioner contends that counsels performance as a whole was deficient and did not meet the standards of the **American Bar Association.** The minimum requirement states that **"It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to facts relevant to the merits of the case and the  penalty in the event of conviction. The investigation should always include efforts to secure information in the possession of the prosecution and law enforecement authorities." See: (1 ABA Standards for Criminal Justice 4-4.1 (3d ed. 1993 Supp.).** Also, **See: Turner v. Louisiana, 379 US 466, 472-473 (1964)** "In the constitutional sense, trial by jury in a criminal case necessarily implies at the very least that the 'evidence developed' against a defendant shall come from the witness stand in a public court room where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel."

## CONCLUSION

Anthony Brown contends that based on all the accumulation of errors committed by his trial counsel, Mary H. Judge, during trial, a new trial is the proper remedy here.

Ms. Mary H. Judge, failed to provide a reasonable adversarial defense by failing to request a **SEARS INSTRUCTION** which was based on evidence provided in the record. Ms. Judge failed to utilize an **ENTRAPMENT DEFENSE** which was in the record and evidence. Ms. Judge also failed to call witnesses important to petitioners defense.

**WHEREFORE,** petitioner contends that if there ever was a case that cried out for collateral evidentiary hearing under 28 U.S.C. § 2255 Motion, this is it. Such a proceeding might reveal that Mary H. Judge representation of Brown was tainted and that a new trial is warrant. Remedies for the **Deprivation of the Sixth Amendment Right to the Effective Assistance of Counsel** should be tailored to the injury suffered form the constitutional violation and should not unnecessaryly infringe on competing interests. **United States v. Morrison, 449 U.S. 361, 364 (1981).** In fashioning a remedy for Anthony Brown, won't be easy but the best remedy available for him is a new trial or for Mr. Brown to be placed in the same position he would have been minus his trial counsels incompetence. **Johnson v. United States, 362 F.3e. 638 (9th Cir. 2004).** A defendant may raise an effective assistance claim in a § 2255 motion whether or not he raised the issue on appeal. **Massaro v. United States, 538 U.S. 5000, 504 (2003).**

Respectfully Submitted,

/s/ _Anthony F. Brown_
Anthony F. Brown, Pro se
Reg.No. 21362-424
Federal Prison Camp
P.O. Box 4000
Manchester, Ky. 40962

Executed on the 27TH Day of APRIL ,2008.

(12)

## CERTIFICATE OF SERVICE

I, Anthony F. Brown, certify under the penalty of perjury that on the last date given below, I deposited a true and correct copy of my MEMORANDUM OF LAW IN SUPPORT FOR MY MOTION PURSUANT TO 28 U.S.C. § 2255 in the Manchester Federal Prison Camps legal mail with first class postage affixed to insure its proper delivery to the following:

UNITED STATES ATTORNEYS OFFICE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
219 SOUTH DEARBORN STREET
CHICAGO, ILLINOIS 60604

EXECUTED ON THIS _27TH_ of _April_ , 2008.

/s/ _Anthony F. Brown_
ANTHONY F. BROWN, PRO SE



Exhibit E

Polk - cross by Judge                                    229

1  Q      After providing them with some information, you

2  learned that they are interested in a deal, right?

3  A      I'm sorry?

4  Q      After you provided them with some information that

5  day, you learned that they are interested in dealing and

6  working with you, is that right?

7  A      The FBI, right.

8  Q      Right.

9  A      That is correct.

10  Q      They wanted you to cooperate?

11  A      Yes, that is correct.

12  Q      And by "cooperating," they want you to make cases

13  for them?

14  A      That is correct.

15  Q      And in exchange for a cooperation deal, you have

16  to consistently -- your understanding is that you have

17  to do two things: one is consistently provide truthful

18  information, right?

19  A      That is correct.

20  Q      And the second thing is bring the agents new

21  cases?

22  A      That is correct.

23  Q      New people for them to prosecute, right?

24  A      That is correct.

25          MR. SCHNEIDER:  Objection.  Argumentative.

Blanca I. Lara - Official Court Reporter - (312) 435-5895

Polk - cross by Judge

```
 1   Q      And then you cleared it up for him, right?

 2   A      Yes, I did.

 3   Q      During that conversation, you were wearing a wire,

 4   right?

 5   A      Digital recorder, yes.

 6   Q      You are recording a conversation?

 7   A      Yes, I am.

 8   Q      During that conversation, you never tell Tony he

 9   will get the drugs, right?

10   A      No, I didn't.

11   Q      And you never tell him he will possess drugs, do

12   you?

13   A      No, I didn't.

14   Q      You never tell him he will deliver drugs, do

15   you?

16   A      No, I didn't.

17   Q      And he never asks you about drugs, does he?

18   A      No, he didn't.

19   Q      That meeting with Tony took place on Tuesday, Jun

20   24th.  In that conversation there's talk about meeting

21   at Jackie's restaurant later on that night, do you

22   recall that?

23   A      Yes, I do.

24   Q      And that meeting never took place, did it?

25   A      No, it didn't.
```

Polk - cross by Judge                                    232

1        THE COURT:  Sustained.

2   BY MS. JUDGE:

3   Q     Because you're trying to work down your sentence,

4   that's why you called Jesse Kuykendoll on June 23rd,

5   right?

6        MR. SCHNEIDER:  Objection.

7        THE COURT:  Overruled.

8   BY THE WITNESS:

9   A     Could yo repeat the question, ma'am?

10  BY MS. JUDGE:

11  Q     Because you're trying to work down your sentence,

12  that's why you called Jesse Kuykendoll on June 23rd?

13  A     That is correct.

14  Q     Now, before we start with your conversation with

15  Jesse Kuykendoll, I just want to clarify something.  You

16  testified about two different thefts, correct, one on

17  June 6th and one on June 27th?

18  A     That is correct.

19  Q     And Tony Brown had nothing to do with the theft on

20  June 6th, is that right?

21  A     That is correct.

22  Q     In fact, your first conversation with Tony Brown

23  is a conversation on June 23rd, right?

24  A     That is correct.

25  Q     And when you called Kuykendoll, you are calling

Polk - cross by Judge                                    231

1   right?

2   A      Yes, I did.

3   Q      And the only way to help yourself out, the only

4   way was to chip away your time in jail by bringing the

5   agents new defendants, right?

6   A      That is correct.

7   Q      And you understood that the bigger the case, the

8   better for you, the less time in jail, right?

9   A      That is correct.

10  Q      You understood the more people you could involve,

11  the better the benefit for you, right?

12  A      That is correct.

13  Q      And that's why we hear you on the transcript at

14  one point talking to Grady saying "what about Ski,"

15  right?

16  A      That is correct.

17  Q      Because you are trying to get Grady to recruit Ski

18  for you, right?

19  A      Yes, that is correct.

20  Q      And you are asking "what about Reese," right?

21  A      That's correct.

22  Q      Because you're trying to round everybody up to

23  help you work off your sentence?

24         MR. SCHNEIDER:  Objection to the form of the

25  question.

Polk - cross by Judge                          239

1   Q      You tell Tony, "..there's a guy that I grew up

2   with that sells dope...," right?

3   A      That's correct.

4   Q      You explain that you and this guy that sells dope

5   ripped off an out-of-towner, right?

6   A      Yes, ma'am.

7   Q      This out-of-towner is supposed to come with 40 or

8   45 stacks, right?

9          MR. SCHNEIDER:  Your Honor, I object to

10  counsel paraphrasing the actual conversation that is of

11  record as an exhibit.

12         THE COURT:  Overruled.

13  BY THE WITNESS:

14  A      That is correct.

15  BY MS. JUDGE:

16  Q      And by "45 stacks" you mean $45,000, right?

17  A      That is correct.

18  Q      Why is it that you say "$45,000"?

19  A      I just made up a figure.

20  Q      So at that time you didn't know it was really

21  going to be $20,000?

22  A      No, I didn't.

23  Q      You explain to Tony that at some point the guy

24  that sells -- excuse me, the guy that sells dope and

25  this out-of-towner are going to go out and get a

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

No.    04-1534

UNITED STATES OF AMERICA
Plaintiff-Appellee

v.

ANTHONY BROWN
Defendant-Appellant.

U.S.C.A. — 7th Circuit
R E C E I V E D

MAR 1 5 2004 **AJB**

**GINO J. AGNELLO**
**CLERK**

## APPELLANT'S MOTION TO WITHDRAW AS COUNSEL FOR DEFENDANT

Appellant ANTHONY BROWN, by the Federal Defender Program and its

attorney, MARY H. JUDGE, hereby moves this Court for an order permitting the

Program to withdraw as appellant ANTHONY BROWN'S attorney in this case.

In support of this motion, the appellant states as follows:

1.    Mr. Brown was sentenced on February 27, 2004.  Notice of Appeal was

    timely filed on March 4, 2004.

2.    For the past several months defense counsel and Mr. Brown have had

    numerous discussions regarding this case.  During these discussions,

    differences have arisen between Mr. Brown and his counsel.  While the

    attorney-client privilege prohibits disclosure of the exact nature of these

    differences, counsel is certain that these differences will not be resolved.

3.    Transcripts have been ordered for this case.

3-15-04

WHEREFORE, for the above reasons, the Federal Defender Program requests that this Court permit the Program to withdraw as ANTHONY BROWN'S attorney in this case.

Respectfully submitted,

FEDERAL DEFENDER PROGRAM
Terence F. MacCarthy
Executive Director

By: _Mary H. Judge_

FEDERAL DEFENDER PROGRAM
Suite 2800
55 E. Monroe Street
Chicago, IL 60603
312/621-8300

## **PROOF OF SERVICE**

I, Mary H. Judge, an attorney, certify that I served the foregoing motion to

U.S. Attorney Barry Miller by hand delivery on March 15, 2004.

Westlaw.

203 Fed.Appx. 711

Page 1

203 Fed.Appx. 711, 2006 WL 2992648 (C.A.7 (Ill.))

**(Cite as: 203 Fed.Appx. 711)**

**H**
U.S. v. Brown
C.A.7 (Ill.),2006.
This case was not selected for publication in the Federal Reporter.NONPRECEDENTIAL DISPOSITIONTo be cited only in accordance with Fed.R.App.P. 32.1.
  United States Court of Appeals,Seventh Circuit.
  UNITED STATES of America, Plaintiff-Appellee,
v.
Anthony BROWN, Defendant-Appellant.
**No. 06-2622.**

Oct. 20, 2006.[FN*]

FN* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. See Fed. R.App. P. 34(a)(2)(C).

Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. No. 03 CR 886, Suzanne B. Conlon, Judge.

Barry Miller, Office of the United States Attorney, Chicago, IL, for Plaintiff-Appellee.
Kevin M. Fee, Jr., Sidley Austin, Chicago, IL, for Defendant-Appellant.

Before Hon. FRANK H. EASTERBROOK, Hon. ILANA DIAMOND ROVNER, and Hon. DIANE S. SYKES, Circuit Judges.

**ORDER**

**\*\*1** In Anthony Brown's initial appeal, this court affirmed his convictions but ordered a limited remand pursuant to *United States v. Paladino,* 401 F.3d 471 (7th Cir.2005), *United States v. Gougis,* 432 F.3d 735, 746 (7th Cir.2005). The district judge conducted the *Paladino* remand and advised us that she would have imposed a shorter sentence had she known the Sentencing Guidelines were advisory. Accordingly, on April 5, 2006, we vacated Anthony Brown's sentence and remanded this case to the district court for resentencing. The district judge held a resentencing hearing but denied Brown's request for a new Presentence Report and did not allow him to present evidence. The court imposed a sentence of 92 months, five months shorter than Brown's original 97-month sentence.

Brown now appeals, arguing that the district court committed reversible procedural error by refusing to conduct a full, " clean slate" resentencing. We agree. Unlike the limited *Paladino* remand, in which the district judge was asked to consider only the question of whether she would have imposed a lesser sentence under an advisory Guidelines system, our April 5, 2006 order vacating Brown's sentence and remanding for resentencing called for a complete-not limited-resentencing. *See United States v. White,* 406 F.3d 827, 832 (7th Cir.2005); *United States v. Polland,* 56 F.3d 776, 777 (7th Cir.1995). That did not occur here. This is not to suggest that all the evidence Brown wanted to present should have been received by the district court, only that the resentencing, like the original sentencing, was not limited in nature and is governed by Rule 32 of the Federal Rules of Criminal Procedure. Accordingly, we once again vacate Brown's sentence and remand for resentencing. Circuit Rule 36 shall apply on remand.

C.A.7 (Ill.),2006.
U.S. v. Brown
203 Fed.Appx. 711, 2006 WL 2992648 (C.A.7 (Ill.))

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# United States Court of Appeals

For the Seventh Circuit
Chicago, Illinois 60604

December 7, 2007

## Before

**Hon.** FRANK H. EASTERBROOK, Chief Judge

**Hon.** ILANA DIAMOND ROVNER, Circuit Judge

**Hon.** DIANE S. SYKES, Circuit Judge

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee,*<br><br>**No.**  07-2739           **v.**<br><br>ANTHONY BROWN,<br>*Defendant-Appellant.* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division.<br><br>No. 03 CR 886<br>Harry D. Leinenweber,<br>*Judge.* |

## Order

Defendant-appellant filed a petition for rehearing and rehearing en banc on November 26, 2007. No judge in regular active service has requested a vote on the petition for rehearing en banc,[*] and all of the judges on the panel have voted to deny rehearing. The petition for rehearing is therefore DENIED.

---

[*] Judge Ripple did not participate in the consideration or decision of this case.