**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **ANTHONY F. BROWN,** | |
| Petitioner, | **Case No. 08 C 2613** |
| v. | **Hon. Harry D. Leinenweber** |
| **UNITED STATES OF AMERICA,** | |
| Respondent. | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Petitioner Anthony F. Brown's Petition to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 ("Section 2255"). For the following reasons, the Petition is denied without an evidentiary hearing.

### I. BACKGROUND

Petitioner, an Illinois state parole officer, was convicted after a jury trial of conspiracy and attempt to possess cocaine with intent to distribute and theft of government property in violation of 21 U.S.C. §§ 841(a)(1) and 846, and 18 U.S.C. § 2. Petitioner, together with government informant Jacques Polk ("Polk") and co-defendants Raymond Grady ("Grady") and Jesse Kuykendoll ("Kuykendoll"), stole $20,000 in cash and a sham kilogram of cocaine from a parked car which Petitioner believed

belonged to a drug dealer but which actually was provided by the FBI as part of a sting operation.

At the time of the robbery on June 27, 2003, Petitioner and Kuykendoll were employed as Illinois parole officers, Grady was a Cook County Sheriff's Deputy and Polk was a police officer with the Chicago Housing Authority (the "CHA"). Polk agreed to cooperate with the FBI after being caught robbing an undercover FBI agent posing as a drug dealer in a sting operation. Kuykendoll and Petitioner previously had worked as CHA police officers with Polk.

Much of the evidence the prosecution presented at trial came in the form of audio and video recordings. The evidence showed that on June 19, 2003, Polk contacted Grady and proposed a theft. Grady suggested they contact Kuykendoll, with whom Polk had worked as a CHA officer, and Polk stated that he knew Kuykendoll was a "crook." On June 23 Grady reported to Polk that he had spoken with Kuykendoll, that Kuykendoll remembered working with Polk at the CHA and that Kuykendoll agreed to participate in the robbery. Grady also stated that Kuykendoll had remembered various acts of misconduct Kuykendoll and Polk had committed while CHA police officers and that Kuykendoll had stated, "Man, our days back in the CHA, man we should of been indicted like a hundred, a hundred times over." Later that same day, June 23, Polk called Kuykendoll, who was riding in a state car with

Petitioner at the time.  Petitioner got on the phone with Polk and asked if Polk remembered a particular search they had conducted together as CHA police officers.  Petitioner and Polk laughed, but the subject was dropped when Petitioner reminded Polk, "it's a state phone."  Petitioner agreed to meet with Polk to discuss the proposed robbery.

The next day, Petitioner met with Polk and Polk explained that the proposed robbery was to take place on Friday, June 27, 2003, and that the plan "is so ridiculous for us, man that's gonna put about at least, minimum five Gs a piece."  Polk explained that he had a drug dealer friend who would set up a drug transaction that they could "hit."  Polk explained that a large amount of money and cocaine would be located in a parked car, Polk's friend would tell him where the car was parked, and Grady, another of Polk's friends, would break into the car.  Polk stated to Petitioner, "He call me and tell me where the car is, Grady get in the car, it's all she wrote.  We split up the cash and my boy always gets the dope."  Petitioner asked Polk if he was sure that his drug dealer friend was not "working with no feds and all that."  Polk assured Petitioner he had already done three or four other jobs with his friend.  Petitioner's role in the robbery was to act as "security" and stand as lookout.  Petitioner stated that he had to work on June 27 but then laughed

and said that being on duty as a parole officer during the robbery would be "even better security."

On June 27, 2003, Petitioner met Polk, Grady and Kuykendoll and all four men drove together in Polk's car to a parking lot where the FBI had placed the car the men planned to rob. Polk parked his car next to the FBI car, a Monte Carlo. Polk walked around and opened the driver's side door of the Monte Carlo and then opened the trunk from inside the car. Petitioner and Kuykendoll then got out of Polk's car and stood near the trunk of the Monte Carlo. The videotape presented at trial showed Petitioner looking into the trunk during part of the time he stood as lookout near the back of the Monte Carlo. Polk or Kuykendoll pulled back the carpet in the trunk of the Monte Carlo revealing the package of sham cocaine and the cash. Polk testified that upon seeing these two items, both Kuykendoll and Petitioner asked, "that's it?" Polk confirmed that these were the items they wanted. Petitioner then opened the rear driver's side door of Polk's car and Polk placed the sham cocaine under the driver's seat. Kuykendoll placed the cash under the driver's seat of Polk's car as well.

The four men got back into Polk's car and left the scene. As they drove away, Polk recalled an event five years earlier when he, Petitioner and Kuykendoll had stolen items apparently belonging to Margie Collins from a home where they were executing

a search warrant as CHA police officers. Polk stated that Petitioner had made off "like he owned a jewelry store." Petitioner responded that he had taken a gold nugget watch and that he still had the watch but wished he had pawned it. On the ride from the robbery Polk also joked with Grady about being greedy and said, "Next you're gonna be like man, can I, can I just take a piece of the kilo? Can I taste?" Upon hearing this Petitioner joined in the joking and asked, "Can I get some for myself?" Polk reminded Petitioner, "You know my man gets the coke." The four men split the cash from the robbery evenly, each taking $5,000.

Petitioner appealed his conviction to the Seventh Circuit on the grounds that there was insufficient evidence to convict him and that the court should not have admitted the taped conversation where Petitioner discussed stealing the gold watch while working as a CHA police officer. The Seventh Circuit affirmed Petitioner's conviction. *U.S. v. Gougis*, 432 F.3d 735 (7th Cir., 2005). Petitioner now asks the Court to vacate his sentence of incarceration for 85 months pursuant to 28 U.S.C. § 2255 claiming ineffective assistance of trial counsel on three grounds: (1) counsel's failure to request a *Sears* jury instruction, (2) counsel's failure to raise an entrapment defense, and (3) counsel's failure to call two potential

witnesses to testify at his trial.  The Court addresses each of Petitioner's arguments in turn.

## II. STANDARD OF REVIEW

Section 2255 provides that a prisoner "may move the court which imposed the sentence to vacate, set aside, or correct the sentence" on the basis that his sentence was imposed in violation of the Constitution or laws of the United States.  28 U.S.C. § 2255(a).  To receive relief under Section 2255, a prisoner must show a "fundamental defect which inherently results in a complete miscarriage of justice," *U.S. v. Addonizio*, 442 U.S. 178, 185 (1979), or "an omission inconsistent with the rudimentary demands of fair procedure," *Hill v. U.S.*, 368 U.S. 424, 428 (1962).

Here, Petitioner alleges that ineffective assistance of counsel at his trial warrants vacating his sentence.  To prevail on an ineffective assistance of counsel claim, petitioner must first "show that counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984).  Second, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *Id.* at 689.

The Court must hold a hearing on a § 2255 petition only if there are disputed facts set forth by affidavits and a disputed material issue. See *Taylor v. U.S.*, 287 F.3d 658 (7th Cir., 2002). If the factual dispute is immaterial because the governing law is clear, no hearing is necessary. *Id.* Thus, a district court may dismiss a § 2255 motion without holding a hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); see *Gallo-Vasquez v. U.S.*, 402 F.3d 793, 797 (7th Cir., 2005).

### III.  DISCUSSION

#### A.  *Sears* Instruction

Petitioner's first ground for his ineffective assistance of counsel claim is his counsel's failure to request a "*Sears* instruction" at his trial. A petitioner claiming ineffective assistance of counsel based on counsel's failure to request a particular jury instruction must show that "his trial counsel's failure to request the . . . instruction rendered the attorney's performance objectively unreasonable and that the deficient performance prejudiced the trial's outcome." *Charlton v. Davis*, 439 F.3d 369, 373-74 (7th Cir., 2006).

A *Sears* instruction is a jury instruction which states that an agreement with a government informant cannot constitute a

criminal conspiracy. *See Sears v. U.S.*, 343 F.2d 139 (5th Cir., 1965). Thus, a *Sears* instruction is warranted where the charging documents are worded in such a way that a jury could believe it could convict a defendant for conspiracy based only on the defendant's agreement with the government informant and no other person. *See, e.g., U.S. v. Duff*, 76 F.3d 122, 127 (7th Cir., 1996).

Here, a *Sears* instruction was unnecessary because the charges against Petitioner excluded the possibility that the jury could base his conspiracy conviction on Petitioner conspiring only with the government informant, Polk. Count Three of the Superseding Indictment stated:

> On or about June 27, 2003, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, ANTHONY BROWN and JESSE KUYKENDOLL, defendants herein, conspired with each other and Raymond Grady knowingly and intentionally to possess with intent to distribute a controlled substance, namely in excess of 500 grams of mixtures containing cocaine, in violation of Title 21, United States Code, Section 841(a)(1);
> In violation of Title 21, United States Code, Section 846 and Title 18, United States Code, Section 2.

Thus, to convict Petitioner of the charge in Count Three, the jury was required to find that he criminally conspired with Kuykendoll and Grady, neither of whom were government informants. A *Sears* instruction simply was not necessary given the phrasing of Count Three and the failure of Petitioner's counsel to request

such an instruction does not constitute ineffective assistance of counsel.

### B. Failure to Raise Entrapment Defense

Petitioner argues that his counsel was ineffective because she failed to raise an entrapment defense at his trial. The defense of entrapment has two elements: (1) improper government inducement of the crime, and (2) lack of predisposition on the part of defendant to engage in the crime. *U.S. v. Ellis*, 23 F.3d 1268, 1271 (7th Cir., 1994). "Once the defendant presents sufficient evidence to demonstrate inducement, it is the prosecution's burden to 'prove beyond a reasonable doubt that the defendant was disposed to commit the criminal act prior to first being approached by Government agents.'" *Addo v. U.S.*, No. 96-3022, 1998 WL 719919, at *4 (N.D.Ill., Oct. 6, 1998) (quoting *Jacobson v. U.S.*, 503 U.S. 540, 549 (1992)).

Here, Petitioner presents no evidence of inducement. On the contrary, all evidence indicates Petitioner eagerly agreed to commit the robbery with his coconspirators. "[W]here the defendant is simply provided with the opportunity to commit a crime, the entrapment defense is of little use because the ready commission of the criminal act amply demonstrates the defendant's pre-disposition." *Jacobson*, 503 U.S. at 541; *see U.S. v. Haddad*, 462 F.3d 783, 790 (7th Cir., 2006) (when a defendant takes a "simple, ordinary opportunity to commit a crime" he cannot make

- 9 -

an entrapment defense). Because an entrapment defense would have been futile in this case, counsel's failure or refusal to raise it did not constitute ineffective assistance of counsel.

**C. Failure to Call Grady and Collins As Witnesses**

Petitioner also claims that his counsel's refusal to call Grady and Margie Collins ("Collins") as witnesses at his trial constituted ineffective assistance of counsel and requires the Court to vacate his sentence. Grady was one of Petitioner's coconspirators and Collins apparently was the CHA resident from whom Petitioner stole a gold watch while executing a search warrant as a CHA officer. "A lawyer's decision to call or not to call a witness is a strategic decision generally not subject to review." *U.S. v. Williams*, 106 F.3d 1362, 1367 (7th Cir., 1997). Furthermore, a defendant cannot sustain an ineffective assistance of counsel claim merely by stating that the proposed testimony would have been favorable. *U.S. v. Ashimi*, 932 F.2d 643, 650 (7th Cir., 1991). Rather, Petitioner must present evidence about the proposed testimony of a putative witness in the form of actual testimony or affidavit. *Id.*

Here, Petitioner has not presented affidavits from Grady or Collins. Instead, Petitioner argues that counsel had information that could have impugned the credibility of both of these witnesses and that Collins could have testified that Petitioner did not steal drugs from her. Petitioner not only fails to

present any evidence supporting his assertion that Grady and Collins would have given helpful testimony, he also fails to show that their testimony would have made any difference in the outcome of his trial. The evidence of Petitioner's guilt was overwhelming and included audio and video recordings of him engaging in the crimes for which he was convicted. Petitioner has failed to establish a reasonable probability that the testimony of Grady and Collins would have affected the outcome of his trial and, as a result, he has failed to show ineffective assistance of counsel.

## IV. CONCLUSION

For the reasons stated herein, Petitioner Anthony F. Brown's Petition to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 is DENIED.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　　　United States District Court

**DATE:** 4/6/2009